Johnny JACOBS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 95–CA–002873–MR,
95–CA–002875–MR.

Court of Appeals of Kentucky.

Feb. 7, 1997.

Lawrence R. Webster, Pikeville, for Appellant.

A. B. Chandler, III, Attorney General, Dina Abby Jones, Carol C. Ullerich, Assistant Attorneys General, Frankfort, for Appellee.

Before BUCKINGHAM, HUDDLESTON and SCHRODER, JJ.

*OPINION*

HUDDLESTON, Judge.

On January 30, 1991, Johnny Jacobs shot and killed his wife, Claudia. A Knott Circuit Court jury convicted Jacobs of first-degree manslaughter, and he was sentenced to imprisonment for ten years. Jacobs appeals asserting that an improper procedure was employed to appoint a special judge to try his case; that the jury instructions, and the statutes upon which they are based, are unconstitutionally vague and incapable of being understood; and that it was error to deny him exemption as a victim of domestic violence and abuse from the stricter probation and parole standards for violent offenders.

After a Knott County grand jury handed up an indictment charging Jacobs with the murder of his wife, Knott Circuit Judge John Robert Morgan recused himself. The Chief Regional Circuit Judge for the region encompassing Knott County thereupon appointed retired Circuit Judge F. Byrd Hogg to hear the case. Jacobs contends that Judge Morgan had no valid grounds to recuse himself, that Judge Hogg's appointment was defective because it occurred before Judge Morgan's recusal became effective, and that the Chief Regional Circuit Judge lacked authority to appoint a retired circuit judge to sit as a special judge. Therefore, he says, the judgment from which he appeals is void.

Ky.Rev.Stat. (KRS) 26A.015(2)(e) requires a judge to disqualify himself "[w]here he has knowledge of any ... circumstances in which his impartiality might reasonably be questioned." Canon 3C(1) of the Code of Judicial Conduct, Sup.Ct. R. (SCR) 4.300, contains a similar provision. In this case, Judge Morgan determined that it was necessary to recuse himself after members of the victim's family questioned his impartiality. Under both the statute and the Canon, recusal is proper if a judge determines that "his impartiality might reasonably be questioned;" in fact, it is mandatory. Affidavits describing the circumstances mandating the recusal are not required. Judge Morgan was in the best position to determine whether questions raised regarding his impartiality were reasonable. We see no reason to second-guess his decision.

Jacobs' argument concerning the timing of Judge Hogg's appointment also lacks merit. Initially, Judge Morgan entered an order of recusal and an order certifying a need for a special judge on May 31, 1994. On June 14, 1994, the Chief Regional Circuit Judge assigned the case to Judge Hogg. After Judge Hogg had been presiding over the case for over a year, a superseding indictment was returned against Jacobs. Although the new indictment was a continuation of the original proceeding, recusal and appointment orders bearing the 1995 indictment number were executed. Jacobs now claims that reversible error occurred when the 1995 order appointing Judge Hogg was received by the circuit clerk a few hours before the 1995 recusal order. Considering that Judge Hogg had been presiding over the matter for more than a year, we are unable to say that this minor procedural error, if it was in fact an error, affected Jacobs' sub-

418

stantial rights. According to Ky. R.Crim. Proc. (RCr) 9.24, we *"must* disregard any error or defect ... that does not affect the substantial rights of the parties." (Emphasis supplied.)

■ Jacobs is correct, however, that Kentucky's Chief Justice should have been the person to appoint Judge Hogg as special judge of Knott Circuit Court. While the Chief Regional Circuit Judge has authority to appoint special judges pursuant to the Supreme Court's Regional Administration Program Charter, the Chief Regional Circuit Judge's authority to appoint *retired* judges, such as Judge Hogg, to serve as special judges was revoked by an order of the Chief Justice on October 8, 1992. Accordingly, only the Chief Justice has authority to appoint retired judges as special judges. *See generally* Ky. Const. § 110 and § 112(4); KRS 26A.020(1).

■ While error unquestionably occurred in the appointment of Judge Hogg, Jacobs is raising this argument for the first time on appeal. He timely objected to the recusal of Judge Morgan and to the timing of Judge Hogg's appointment, but failed to question the Chief Regional Circuit Judge's authority to make the appointment until now.

■ Since at least 1860 it has been the rule that objection to one acting as special judge cannot be made for the first time on appeal. *Vandever v. Vandever,* 60 Ky. 137, 138 (3 Metc. 137) (1860). In 1899, Kentucky's highest court addressed this issue saying:

Counsel for appellants contend that the special judge trying this action had no authority to do so; hence, he says, a reversal of the judgment must follow. It is true that the record fails to show that the special judge was selected according to statutory provisions, or was selected by express agreement of parties to try the action; but it is sufficient answer to say that there appears to have been no objection by any of the parties in the lower court to trial by the special judge. Appellants participated in the trial of the action, filing many pleadings and introducing much proof, and this court will not now for the first time enter-

tain the objection as to the authority of the special judge to render judgment. (Citation omitted.)

*Salyer v. Napier,* Ky., 51 S.W. 10, 11 (1899). Similar rulings have been made in a number of other cases, including: *Duff v. Hagins,* 147 Ky. 246, 143 S.W. 1059, 1060 (1912); *Martin v. Stumbo,* 282 Ky. 793, 140 S.W.2d 405, 408 (1940); *Proctor v. Peoples Bank of Morehead,* 283 Ky. 100, 140 S.W.2d 667, 670 (1940); and *Sevier v. Sevier,* Ky., 280 S.W.2d 526, 527 (1955). In a recent case the Supreme Court unanimously rejected as untimely a post-decision challenge to the appointment of a special justice to the Court saying:

As to the motion for recusal of Special Justice Chenoweth, we first observe that South East Coal Company and all parties hereto were notified of the appointment of the Special Justice well in advance of oral argument. There was no objection. South East Coal Company appeared, by counsel, at oral argument with Special Justice Chenoweth sitting and still there was no objection. Nearly ten months passed from the date of oral argument until rendition of our opinion and no issue was raised as to the participation of the Special Justice. Only after South East Coal Company received an unfavorable opinion did it voice any complaint. We need not provide extensive authority for the proposition that a party must timely object or be deemed to have waived any such objection. (Citations omitted.)

*Kentucky Utilities Co. v. South East Coal Co.,* Ky., 836 S.W.2d 407, 409 (1992), *petition for cert. dis.,* 506 U.S. 1090, 113 S.Ct. 1147, 122 L.Ed.2d 498 (1993).

Based upon these authorities, both ancient and modern, we hold that Jacobs' failure to challenge the appointment of Special Circuit Judge Hogg at or before trial, however meritorious the challenge may have been, resulted in a waiver of the objection. Although unpreserved errors that affect the substantial rights of a party may be reviewed "upon a determination that manifest injustice ... resulted from the error," RCr 10.26, Jacobs has not alleged any prejudice resulting from having Judge Hogg on the bench. Conse-

quently, this error does not warrant RCr 10.26 review. It is significant that this error could easily have been corrected by an order from the Chief Justice had it been called to the attention of the trial court in a timely manner.

■ Jacobs' next argument is that KRS Chapter 507, which distinguishes the six types of homicide, is unconstitutionally vague. In response to this argument, the Commonwealth correctly points out that KRS 418.075(1) provides that:

> In any proceeding which involves the validity of a statute, the Attorney General of the state shall, before judgment is entered, be served with a copy of the petition, and shall be entitled to be heard....

The Supreme Court has made it clear that "the requirements of KRS 418.075 are mandatory in order for a court to consider the constitutionality of a statute and ... strict enforcement of the statute will eliminate procedural uncertainty." *Adventist Health Systems/Sunbelt Health Care Corp. v. Trude,* Ky., 880 S.W.2d 539, 542 (1994). Since Jacobs did not comply with the requirements of KRS 418.075(1) by providing the Attorney General with notice of his challenge to the constitutionality of KRS Chapter 507 before the trial court, we will not address the issue.

■ We recognize that in criminal cases such as this the Commonwealth is represented at the trial level by local prosecuting officials. However, Kentucky, unlike the United States and some sister states, does not have a unified prosecutorial system. Although there is a relationship between the Attorney General and local prosecuting officials, Commonwealth's Attorneys do not answer to the Attorney General. *See generally* KRS 15.220 and 15.725. Since the Attorney General is elected by registered voters from throughout the Commonwealth, he is in a unique position to defend the constitutionality of an act of the General Assembly. The Attorney General must be given this opportunity at the trial level because a declaration regarding the constitutionality of a statute affects all the citizens of the Commonwealth, not just the citizens represented by the local prosecuting official. For that reason, we conclude that the notice requirements of KRS 418.074 must be met in criminal, as well as civil, actions.

■ Jacobs' final argument is that the circuit court erred in denying him exemption from the KRS 533.060 and 439.3401 restrictions on probation, shock probation, conditional discharge and parole on the ground that he was a victim of domestic violence. The provision of KRS 533.060(1) upon which Jacobs relies is highlighted below:

> When a person has been convicted of an offense ... classified as a Class A, B, or C felony[1] and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, *except when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted.* If the person convicted claims to be exempt from this statute because that person was the victim of domestic violence and abuse as defined in KRS 403.720, the trial judge shall conduct a hearing and make findings to determine the validity of the claim and applicability of this exemption. The findings of the court shall be noted in the final judgment. (Emphasis supplied.)

Similarly, KRS 439.3401(3) provides that a violent offender[2] convicted of a Class B felony, such as Jacobs, "shall not be released on parole until he has served at least fifty per-

---

**1.** First-degree manslaughter is a Class B felony. Ky.Rev.Stat. (KRS) 507.030.

**2.** KRS 439.3401(1) defines "violent offender" as "any person who has been convicted of or pled guilty to the commission of a capital offense,

Class A felony, or *Class B felony involving the death of the victim,* or rape in the first degree or sodomy in the first degree of the victim, or serious physical injury to a victim." (Emphasis supplied.).

cent (50%) of the sentence imposed," while KRS 439.3401(4) explains that the restriction "shall not apply to a person who has been determined by a court[3] to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the death of the victim or serious physical injury to the victim." KRS 403.720 defines "[d]omestic violence and abuse" as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple."

Rather than requesting an evidentiary hearing on the domestic violence issue, Jacobs elected to rely on the evidence adduced at his trial. The circuit court correctly found that the record did not support a finding that Jacobs had been a victim of domestic violence. Jacobs did not offer proof that he had ever suffered physical injury or serious physical injury, or that he had been sexually abused or assaulted as a result of Claudia's actions. *See* KRS 403.720. The only other way that he could establish that he had been a victim of domestic violence was to prove that he was in "fear of imminent physical injury, serious physical injury, sexual abuse, or assault." *Id.* While Jacobs did offer proof that Claudia had threatened to harm him and threatened to burn down their home, neither he nor other family members testified that they actually feared that Claudia would carry out her threats. In fact, Jacobs was not even aware of Claudia's threats until after the shooting. Without knowledge of the threats, it was impossible for Jacobs to have feared imminent harm at the time of the shooting. Therefore, the circuit court correctly denied Jacobs' motion for exemption from the restrictions of KRS 533.060 and 439.3401.

The judgment is affirmed.

BUCKINGHAM, J., concurs.

SCHRODER, J., concurs in part and dissents in part and files a separate opinion.

SCHRODER, Judge, concurring in part and dissenting in part.

The facts in this case are relatively simple. A sitting circuit judge recused himself and the chief regional circuit judge appointed a retired judge as a special judge to hear defendant's case. Section 110(5)(b) of the Kentucky Constitution and KRS 26A.020(1) allows the chief justice to appoint a retired judge as a special judge, but neither the Constitution nor the Supreme Court's rules, adopted pursuant to section 112(4) of the Kentucky Constitution, allows a regional circuit judge to make such an appointment.

The majority holds that the appointment is voidable only if there was a timely objection, citing *Martin v. Stumbo*, 282 Ky. 793, 140 S.W.2d 405 (1940). I believe it was void from the beginning, as the matter is jurisdictional. The circuit court has jurisdiction of the defendant's case but only a judge, not an interloper, can conduct the trial. *See Ketcham v. Manning*, 212 Ky. 325, 279 S.W. 344 (1926); *Pinkleton v. Lueke*, 265 Ky., 84, 95 S.W.2d 1103 (1936); *Miller v. Anderson*, Ky., 519 S.W.2d 826 (1975). Without authority from our constitution, statutes, or rules adopted pursuant thereto, the appointment has no legal basis. *Regency Pheasant Run Ltd. v. Karem*, Ky., 860 S.W.2d 755 (1993). Good intentions and competence in the person appointed special judge will not substitute for legal authority any more than recognizing a kangaroo court of the "Freeman" who attempts to set up a parallel government by ignoring the constitution and the ballot box. *Kuprion v. Fitzgerald*, Ky., 888 S.W.2d 679 (1994).

I believe that the Supreme Court should not only set aside *Martin v. Stumbo, supra,* and the defendant's alleged conviction, but also expunge it from the court's record as well. *Bowles v. Manning*, 196 Ky. 728, 245 S.W. 506 (1922).

---

3. The proper standard for determining whether a defendant is a "victim of domestic violence" for purposes of parole eligibility restrictions of violent offender statute is preponderance of the evidence. KRS 439.3401(4); *Commonwealth v. Anderson*, Ky., 934 S.W.2d 276, 278 (1996).