3 S.W.3d 740 (1999)
Judge Michael McDONALD, Kentucky Court of Appeals (Retired), Chief Judge John P. Hayes, Kentucky Court of Appeals (Retired), Judge Earl O'Bannon, Jr., Jefferson Circuit Court (Retired), Judge Ellen B. Ewing, Jefferson Circuit Court (Retired), Chief Judge Charles B. Lester, Kentucky Court of Appeals (Retired), Judge Benjamin F. Shobe, Jefferson Circuit Court (Retired), Chief Judge Richard A. Revell, Jefferson Family Court (Retired), Judge Michael J. O'Connell, Jefferson Circuit Court (Retired), Movants,
v.
The ETHICS COMMITTEE OF THE KENTUCKY JUDICIARY, Respondent.
No. 99-SC-00531-OA.
Supreme Court of Kentucky.
October 21, 1999.
As Amended November 15, 1999.
*741 Peter L. Ostermiller, Louisville, for Appellant.
Byron L. Hobgood, Franklin, Gordon & Hobgood, Madisonville, B.M. Westberry, The Ethics Committee of the Kentucky Judiciary, Paducah, for Appellee.
KELLER, Justice.
Eight retired judges who previously served as elected regular Judges at various levels of the Kentucky Court of Justice move this Court pursuant to Supreme Court Rule 4.310(4) to review Kentucky Judicial Ethics Committee Opinion JE-95. We must determine whether Supreme Court Rule 4.300, Canon 5 A(1)(b) of the Kentucky Code of Judicial Conduct prohibits retired judges who subjectively intend to accept future appointments as special judges from endorsing nonpartisan judicial political candidates.
Kentucky Constitution Section 121 gives the Kentucky Supreme Court the authority to regulate judicial conduct. Pursuant to that authority, the Court issued Supreme Court Rule IV which governs Judicial Retirement and Removal. This rule includes the Kentucky Code of Judicial Conduct (Code), codified at SCR 4.300, which is intended "to state basic standards which should govern the conduct of all judges in establishing and maintaining high standards of judicial and professional conduct." SCR 4.300.
We are asked to examine the Code's application to a class of judges referred to as special judges. Kentucky Constitution Section 110(5)(b) empowers the Chief Justice of the Kentucky Supreme Court to "assign temporarily any Justice or Judge of the Commonwealth, active or retired, to sit in any court other than the Supreme Court, when he deems such assignment necessary for the prompt disposition of causes." Id. Historically, the Chief Justice of the Kentucky Supreme Court has appointed special judges to the bench to address situations where a judge is unavailable because of vacancies or conflicts. In Jacobs v. Commonwealth, Ky.App., 947 S.W.2d 416 (1997), the Court of Appeals noted the Chief Justice has authority "to appoint retired Judges as Special Judges" pursuant to both Kentucky Constitution Sections 110 and 112(4) and KRS 26A.020(1). Id. at 418. KRS 26A.020(1) refers to a retired judge who replaces a disqualified regular judge as a special judge. Chief Justices have traditionally and logically turned to experienced, retired judges when the need for an appointment arises.
*742 The Code recognizes that retired judges sitting as special judges may draw their income from other sources, and it exempts special judges from certain judicial canons:
All judges should comply with this Code except as provided below
A. Part-Time Judge or Special Judge.[1] A part-time judge is a judge who serves on a continuing or periodic basis, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge.
(1) is not required to comply with Canon 4D(3), E, F, and G[2]. SCR 4.300.
The issue before the Court hinges, however, on a Canon from which SCR 4.300 does not provide exemption. Canon 5 A(1)(b) reads:
A Judge or a candidate for election to judicial office shall not make speeches for or against a political organization or candidate or publically endorse or oppose a candidate for public office.
This matter arises out of Judicial Ethics Opinion JE-95 issued by the Ethics Committee on April 20, 1999, in response to a question sent to the Committee by a candidate for judicial office:

Question: May retired judges who intend to act as Special Judges endorse judicial candidates?

Answer: No. Retired judges are bound by Canon 5 which prohibits any judge from endorsing candidates for public office.
A majority of the Judicial Ethics Committee agrees that retired judges who intend to act as Special Judges are prohibited from endorsing candidates for public office. The test is a subjective one. If, after retiring, a judge intends to serve as a Special Judge, he must forego whatever opportunities he has to endorse candidates for public office.
 /s/ Chairman
The movants in this action seek review of JE-95 in this Court and argue that JE-95 interprets Canon 5 A(1)(b) in a manner inconsistent with the free speech guarantees in the Kentucky and United States Constitutions. We agree free speech issues are relevant to this analysis, but we frame our review of Judicial Ethics Opinion JE-95 as an issue of interpretation. Specifically, we address whether the Code applies to retired judges who subjectively intend to serve as special judges in the future, as construed by JE-95, or whether the Code applies only to special judges while they are serving as such. The question we answer is "when is a special judge a special judge?" JE-95 interprets the Code to treat as special judges all retired judges who subjectively intend to accept future appointments as special judges. We conclude that the interpretation in Judicial Ethics Opinion JE-95 is incorrect, and hold that the Code applies only to special judges during the period of time they are performing judicial duties. In other words, we conclude that a person is only a special judge, for Code purposes, during the period of time he or she is then serving as special judge.
Supreme Court Rule IV contains language in a number of places which evidences an intent to apply the disciplinary rules of the Code only to those persons who are currently performing judicial functions or are seeking judicial office. First, SCR 4.000, which defines the scope *743 of Rule IV governing the Judicial Retirement and Removal Commission applies Part IV:
... to all proceedings before the Judicial Conduct Commission involving the discipline, retirement or removal of justices of the Supreme Court and judges of the Court of Appeals, circuit court, and district court. SCR 4.000.
The very next section, SCR 4.010, clarifies that current judicial activity is implicit in Rule IV's definition of "judge" as "any judge or justice of the Court of Justice or other officer of the Court of Justice performing judicial functions." SCR 4.010 (emphasis added). SCR 4.025(3) goes even further and explains that the Judicial Retirement and Removal Commission cannot discipline former judges after they have left the bench and a brief period of time has passed:
For any violation other than a campaign violation, the authority of the Commission to take action against a judge who has left office shall be barred unless notice of preliminary investigation pursuant to SCR 4.170 has been issued within 180 days after the judge leaves office. SCR 4.025(3).
Additionally, the final section of the Kentucky Code of Judicial Conduct, SCR 4.300, titled "Application of the Code of Judicial Conduct" limits its application to "[a]nyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions."SCR 4.300 (emphasis added). Our use of the present tense in drafting the rule was intentional. The Kentucky Code of Judicial Conduct applies to judges currently engaged in judicial functions, and Judicial Ethics Opinion JE-95's interpretation which expands the Code's scope to include "dormant" judges ignores the plain language of the rule.
We also note that the preamble to SCR 4.300 is explicit that it should be "applied consistent with constitutional requirements...." SCR 4.300. Although we feel the language of Supreme Court Rule IV alone is sufficient to demonstrate that JE-95 misinterprets the scope of the Kentucky Code of Judicial Conduct we examine the movants' claims that JE-95's interpretation is inconsistent with free speech guarantees. We do so for the purpose of comparing what we find is the proper interpretation of Supreme Court Rule IV's application to the public political participation of special judges and determining whether any such speech restrictions are constitutionally permissible.
As this Court has determined that the Kentucky Constitution provides protection no greater than but co-extensive with the First Amendment to the United States Constitution in Commonwealth v. Foley, Ky., 798 S.W.2d 947 (1990), we consider both state and federal precedent in our analysis of movants' claim and reach the conclusion that JE-95's interpretation is constitutionally invalid.
The right to free speech is not absolute and states are permitted to regulate it within certain limitations if the regulation is within the public interest. Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). Necessarily, examination of a free speech claim requires a determination of the level of scrutiny proper for a particular restriction. Movants argue that JE-95's interpretation of the relevant Canons creates a content-based speech restriction which requires the strictest of scrutiny. See, e.g., Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Respondent argues that we should evaluate the opinion under the more lenient sliding scale perspective drawn from Morial v. Judiciary Commission of the State of Louisiana, 565 F.2d 295 (5th Cir.1977) and ultimately determine whether the restriction on speech contemplated in JE-95 is "reasonably necessary" to further a substantial state interest. We conclude strict scrutiny review is proper in this case.
Judicial Ethics Opinion JE-95 unquestionably contemplates a content based restriction on speech. Prohibiting retired *744 judges from endorsing judicial candidates restricts their messages and not the media by which they choose to communicate. Accordingly, the courts must examine the restriction and determine whether it is supported by a compelling state interest and "narrowly drafted so as to avoid unnecessary abridgement of constitutional rights." Ackerson v. Kentucky Judicial Retirement and Removal Commission, 776 F.Supp. 309, 313 (W.D.Ky.1991); J.C.J.D. v. R.J.C.R., Ky., 803 S.W.2d 953 (1991). As the Kentucky Code of Judicial Conduct is intrinsically connected to discipline issues, we also note regulations connected with potential sanctions are closely scrutinized. In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978).
We find respondent's argument that we should examine Judicial Ethics Opinion JE-95 under Morial's sliding-scale approach unpersuasive. After a careful reading of Morial, we remain unconvinced the Fifth Circuit's interpretation of United States Supreme Court free speech precedent is correct. While we admire the Morial court's attempt to bring order from apparent chaos, a review of the United States Supreme Court precedent cited in the Morial opinion leaves us with little confidence those Justices intended to embrace the perspective found by the Morial court. The Fifth Circuit frankly admits the United States Supreme Court "has not articulated the applicable test in precisely this way." Id. at 300, Note 5. We would note in the more than twenty years since Morial was written, our nation's highest Court has still not endorsed its perspective.
Having made the decision to apply strict scrutiny to the speech restriction outlined in JE-95, we must presume it unconstitutional and place the burden of proof upon the state, here the Judicial Ethics Committee, to demonstrate the restriction is necessary to further a compelling interest and is narrowly drawn toward that end. Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). We begin with an analysis of the state's interest in restricting this speech and proceed to discuss the appropriateness of the connection between the stated interest and the language of JE-95.
The Judicial Ethics Committee defends its interpretation as important to maintain the independence and integrity of the judicial branch. Specifically, the Committee argues retired justices who are politically active in behalf of a judicial candidate, especially in fund raising situations, may unknowingly exert pressure on attorneys and litigants who recognize the future possibility of practicing in front of the retired judge sitting as special judge. Particularly, in a situation in which a retired judge assisted a judicial candidate in fund raising, the "veil of ignorance" between bench and contributor would be absent. The Committee submits politicking by retired judges risks undermining public confidence in the judiciary by piercing this barrier and potentially creating the impression that political tithes can influence the rule of law.
Without question, preservation of the integrity, independence and objectivity of the judicial system is a compelling state interest. J.C.J.D. v. R.J.C.R., Ky., 803 S.W.2d 953, 956 (1991). In fact, "[a]n even-handed, unbiased and impartial judiciary is one of the pillars upon which our system of government rests." Ackerson at 313. Further, it is axiomatic that public confidence in the authority of the courts is instrumental to the continued rule of law. The Kentucky Code of Judicial Conduct identifies the importance of this value in its opening paragraph:
Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American and Kentucky concepts of justice and the rule of law. Intrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a *745 public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law. SCR 4.300. PREAMBLE.
We agree with the Committee that protection of the integrity and independence of the judiciary is a compelling state interest.
We are not convinced, however, the restriction on retired judges' speech described in Judicial Ethics Opinion JE-95 is sufficiently tailored to the stated compelling state interest, and we therefore find the opinion constitutionally inadequate.
First, an examination of the types of speech proscribed under JE-95 reveals it prohibits some speech which could jeopardize judicial integrity and independence only under the most hypothetical of situations. While the Committee focuses on the risks associated with fund raising by retired judges, JE-95 expresses the opinion that the Code of Judicial Conduct prevents those judges from "endorsing candidates for political office." This includes a large amount of potential speech (such as allowing one's name to be printed on campaign literature with a list of other persons who endorse a particular judicial candidate or appearing in a television advertisement) which does not plausibly jeopardize judicial integrity when engaged in by persons no longer in the day-to-day exercise of judicial functions. Even if there were some residual risks relating to judicial integrity, however, we fail to see the internal coherence of an interpretation which would prohibit such speech by retired judges who subjectively intend to serve as special judges at undetermined future times, but allow the same speech by retired judges who have, proverbially, hung up their robes permanently. Under the logic of JE-95, it would be permissible for a retired judge to have her name listed as "Retired Circuit Judge Jane Doe" on a judicial candidate's campaign paraphernalia listing her notable endorsements only if that retired judge had no intention of returning to the bench as a special judge. A retired judge who intends to answer the call to service as a special judge would be prohibited from allowing his same endorsement to be included in campaign literature. If we fear the public will lose faith in the judiciary because of biases they perceive in retired judges' public expressions of their opinions, a scheme which depends on a razor-thin subjective intent distinction is incoherent.
In contrast, the interpretation we see consistent with the language of Supreme Court Rule IV, that the Kentucky Code of Judicial Conduct only applies to those persons currently performing judicial responsibilities or those seeking judicial office, survives constitutional scrutiny. Those persons currently sitting as judges are prohibited from public endorsements of judicial candidates, regardless of which level of the Court of Justice on which they perform their judicial responsibilities, and regardless of whether they hold their seat on the bench until the next election or only temporarily as a special judge. This strikes a constitutionally adequate balance between the risks of undermining public confidence in the bench by jeopardizing judicial integrity and independence and limiting no more speech than necessary to maximize the compelling state interest. Without doubt, the state's concerns regarding judges' public involvement in the campaigns of others are most real when the actions of visible, currently sitting judges are involved. Judicial Ethics Opinion JE-95's interpretation of the Code's application simply misreads the scope of Supreme Court Rule IV and attempts to regulate speech which is, at best, tenuously connected to the state interest involved. In order to be consistent with the language of Supreme Court Rule IV and constitutional guarantees of free speech, the Code must apply to special judges only during the period of time they are performing judicial functions.
*746 For the reasons outlined above, Judicial Ethics Opinion JE-95 is hereby vacated.
LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.
STUMBO, J., concurs in part and dissents in part by separate opinion.
STUMBO, Justice, concurring in part and dissenting in part.
While I concur in part with the result reached by the Majority, I must write separately to express my concerns with the practical effect of this resolution. The United States and Kentucky Constitutions guarantee the right to free political speech to every citizen. In choosing the judiciary as our livelihood, however, we also choose to live with certain restrictions on our rights. In Morial v. Judiciary Comm'n of Louisiana, 565 F.2d 295 (5th Cir., 1977), cert. denied, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978), the federal court found it was not a violation of the First Amendment to require a judge to resign from office upon becoming a candidate for elective non-judicial office. The court considered three interests of the state in reaching the conclusion that the restriction was not inappropriate:
The specific evils targeted are three. First, the state wishes to prevent abuse of the judicial office by a judge[] during the course of the campaign. The state also wishes to prevent abuse of the judicial office by judges who have lost their electoral bids and returned to the bench. Finally, Louisiana asserts an interest in eliminating even the appearance of impropriety by judges both during and after the campaign.
Id. at 302.
While the second factor does not come into play in the present situation, the others are fully involved. The majority acknowledges the first by limiting the retired judge's political activity on behalf of other judicial candidates to those periods during which he or she is not actually serving as a special judge. The difficulty with this resolution is that one can be called upon at any time to serve as a special judge without notice and at a time when one's political support for a candidate is being advertized as part of a campaign.
Once the retired judge's support is so publicized, is he or she then required either to renounce the endorsement or, alternatively, to refuse any appointments until after election day? The first alternative is at best impractical, and at worst a misrepresentation of the true state of affairs to the public monitoring the progress of the candidate's campaign. A sitting judge is not permitted to endorse a candidate publically, but may only offer a private opinion. Yet how can one "unendorse" without seeming to offer a public opinion? Withdrawing an endorsement with no explanation could lead to the perception that for some reason the candidate no longer merits the endorsement. Yet if it is explained that the endorsement is being withdrawn simply because the endorser is serving as a special judge, then practically speaking, the endorsement will remain in effect and the aforementioned evils of possible abuse of office and appearance of impropriety will not have been avoided at all. Either of these scenarios poses problems that are readily avoidable by a simple, easily enforceable rule stating that when a retired judge lets it be known that he or she will serve as a special judge if appointed, he or she likewise agrees that no political endorsements will be made.
Most importantly, I think it is crucial that we prohibit activity that has the appearance of impropriety. While such activity is difficult to actually define and pinpoint with accuracy, an effort to avoid it is vital to the health of the legal community. Ours is a profession that is necessary to the maintenance of the constitutional guarantees of personal and civic rights and responsibilities. To retain the respect of the public and maintain the integrity of the bench it is important that the members of the judiciary, whether regularly sitting or *747 special judges, keep their distance from elections other than their own. The absolute need for a bench that is, both in fact and in appearance, completely impartial and independent is undermined by anything less than a system that clearly separates the political from the judicial.
Thus I concur with the majority opinion's conclusion that a retired judge may endorse judicial candidates under limited circumstances. I, however, would implement a system whereby any retired judge may give written notice to this Court or the Administrative Office of the Courts of his or her willingness to serve as a Special Judge with full knowledge that doing so will mean that no political endorsements may be publicly made until such notification has been withdrawn.
NOTES
[1] We realize that this Court has indicated in the past that Special Judges were to be treated as judges pro tempore under the Kentucky Code of Judicial Conduct. Regency Pheasant Run Ltd v. Karem, Ky., 860 S.W.2d 755 (1993). That portion of Regency Pheasant Run is no longer correct because the amended SCR 4.300 has a specific classification for Special Judges.
[2] Effectively, this allows retired judges who intend to act as special judges on a continuing or periodic basis to expand their business interests, act as an arbitrator or mediator, and practice law subject to some restrictions.