

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00203-CV

RON BRANEFF,

                                                    Appellant

 v.

ANN TROUTMEN,

                                                    Appellee

From the 82nd District Court
Robertson County, Texas
Trial Court No. 06-02-17447-CV

## MEMORANDUM OPINION

Ron Braneff sued Ann Troutmen, his ex-wife, for malicious prosecution after he was acquitted of forging a deed. Troutmen filed a hybrid (traditional and no-evidence) motion for summary judgment, which the trial court granted. In two issues, Braneff asserts that the trial court erred in granting summary judgment on malicious prosecution.[1] We agree and will reverse and remand the case.

---

[1] Braneff also sued Troutmen for conversion and for partition of community property that had not been divided in their divorce. Troutmen moved for and obtained summary judgment on those two claims as well, but Braneff's brief is expressly limited to his claim for malicious prosecution.

The elements of malicious prosecution are:

(1) commencement of a criminal prosecution against the plaintiff;
(2) the defendant's initiation or procurement of that prosecution;
(3) termination of the prosecution in the plaintiff's favor;
(4) the plaintiff's innocence;
(5) lack of probable cause to initiate or procure the prosecution;
(6) malice in filing the charge; and
(7) damage to the plaintiff.

*Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006).

In her hybrid motion, Troutmen sought a traditional summary judgment with evidence purporting to establish as a matter of law that she had probable cause to initiate or procure Braneff's prosecution (element 5) and that she did not act with malice (element 6). She also sought summary judgment on the ground that there was no evidence on those two elements, which are the focus of this appeal. Braneff filed a response with summary-judgment evidence, including his affidavit and the reporter's record from his criminal trial.

**Standard of Review**

The trial court's judgment specifically states that "there are no genuine issues of material fact and there is no evidence to support the claims of" Braneff. It thus appears that the trial court granted Troutmen's no-evidence motion and that it did not rule on Troutmen's traditional motion because it did not deny it. Because Troutmen filed a notice of cross appeal challenging "any ruling adverse to Defendant that is contained in or subsumed by the final Judgment or that is material to any issue raised or relief sought by Plaintiff on appeal," and because she has briefed her traditional motion, we review whether summary judgment was proper on either motion. *See Diversicare Gen.*

*Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005); *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625-26 (Tex. 1996).

We would typically first address the no-evidence motion for summary judgment. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004); *Shaun T. Mian Corp. v. Hewlett-Packard Co.,* 237 S.W.3d 851, 855 (Tex. App.—Dallas 2007, pet. denied). But because Troutmen's traditional and no-evidence summary-judgment motions are grounded on the same two elements of Braneff's malicious prosecution claim, we will address them simultaneously to determine if a genuine issue of material fact exists on those two elements.

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006); *see also Humphrey v. Pelican Isle Owners Ass'n*, 238 S.W.3d 811, 813 (Tex. App.—Waco 2007, no pet.). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez*, 206 S.W.3d at 583. The nonmovant must produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i); *see id.* Comment 1997 ("To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements."). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *King Ranch, Inc. v. Chapman*, 118

S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). On the other hand, the evidence amounts to no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of fact. *Id.* When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the nonmovant. *Ridgway*, 135 S.W.3d at 601.

In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756.

## Background

The summary-judgment evidence shows, by way of background, that in their contentious divorce, Troutmen was awarded a 136-acre tract of land in Hopkins County (the Hopkins County Land) that Braneff and Troutmen had acquired during their thirty-three year marriage. The divorce was finalized on August 15, 2001. Their daughter had been living on the Hopkins County land and had been in the process of buying the Hopkins County land from her parents under a contract for deed, but she moved when it appeared that the Hopkins County land was going to be foreclosed on because payment of Braneff and Troutmen's note was overdue and the divorce had

been taking too long. To prevent foreclosure, Troutmen borrowed approximately $62,000 to pay the note's balance. Meanwhile, Braneff had filed a mechanic's and materialman's lien against the Hopkins County land based on his allegation that he had rebuilt a frame house on it.

To help repay the $62,000 loan, Troutmen sold a small tract of the Hopkins County land to Dorothy Mills in 2002. On a visit to his daughter in Hopkins County in approximately March of 2003, Braneff learned that Troutmen had sold the tract to Mills. On April 21, 2003, Braneff filed with the County Clerk of Hopkins County a special warranty deed (the April 21, 2003 deed) for the Hopkins County land that reflects a transfer of it from Troutmen to Braneff.

Troutmen also agreed to sell forty acres of the Hopkins County land to Mr. and Mrs. Joe Price in 2002, but that sale did not close until May of 2003 because it had been held up while the parties waited for Braneff's lien to expire. The Prices began to build a house on the land, and when Braneff discovered that around August of 2003, he put a note on their gate telling them to leave the property and to remove their materials. Braneff then showed up soon thereafter, told Joe Price he was the owner of the property, and Price claimed that he was the owner. Braneff went to the Hopkins County Sheriff's Department to get them involved, and the Sheriff's Department called Price, told him Braneff was there, and asked Price to come in to discuss it. Braneff showed Price and the officer the April 21, 2003 deed from Troutmen to him. A copy was made and given to Price. Braneff was asked to stay away from Price's land until the matter was cleared up, and Price stopped building.

Price called Troutmen and told her what had happened. Troutmen traveled to Hopkins County and obtained a copy of the April 21, 2003 deed. She took a copy of it to Frank Long, the Hopkins County District Attorney, told him that the deed was forged, and gave him several other related documents. Long in turn gave the documents to David Gilmore, a detective with the Sulphur Springs Police Department, and asked him to investigate it. Troutmen also sent a detailed fax to Gilmore and provided him with more documents. A Hopkins County Grand Jury indicted Braneff with the state-jail felony offense of forging the April 21, 2003 deed, and in a January 2005 jury trial, Braneff was acquitted. Braneff then sued Troutmen for malicious prosecution.

## Probable Cause

To prove malicious prosecution against Troutmen, Braneff must establish that Troutmen lacked probable cause to initiate or procure the forgery prosecution. Troutmen's traditional summary-judgment motion asserts that probable cause was established as a matter of law because Long and Gilmore testified in their depositions that they thought there was probable cause to charge and prosecute Braneff for forging the April 21, 2003 deed.

Under the probable cause element, we consider "whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997); *Kroger*, 216 S.W.3d at 792-93. A presumption exists that the "defendant acted reasonably and had

probable cause to initiate criminal proceedings." *Kroger*, 216 S.W.3d at 793. "To rebut this presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause." *Id*. Such evidence includes, for example, prior bad relations, preexisting debt, or any private motivation to harm the plaintiff. *Id.* at 795.

We consider "only whether the complainant reasonably believed that the elements of a crime had been committed based on the information available to the complainant before criminal proceedings began." *Richey*, 952 S.W.2d at 519. The question is not what the actual facts were, but what the defendant honestly and reasonably believed the facts to be. *Kroger*, 216 S.W.3d at 792-93. When the facts are disputed, the jury "must weigh evidence and resolve conflicts to determine if probable cause exists, as a mixed question of law and fact." *Richey*, 952 S.W.2d at 518.

Long's and Gilmore's beliefs about probable cause are inapposite to this element; instead, Troutmen's belief—what she "honestly and reasonably believed the facts to be"—is at issue. Therefore, to the extent summary judgment was granted on Troutmen's traditional motion on this element, the trial court erred.

We turn to whether Braneff's summary-judgment evidence raises an issue of material fact on this element. Braneff's affidavit first explains how he came to possess the April 21, 2003 deed. With respect to the Hopkins County land and the partition of his and Troutmen's community property, Braneff had signed a special warranty deed, dated December 29, 2000, to Troutmen of his community interest in the Hopkins County land because he knew the partition was coming in the pending divorce. His

affidavit continues:

> After [Troutmen] had received this deed and recorded it, and after we had worked out most of the details of the partition through our respective attorneys at the time, my then wife and I spoke on the telephone. I do not recall the exact date, but she telephoned me frequently to express anger. On this occasion, however, we discussed the fact that I had rebuilt a frame house which had been moved onto and stood on the 136.370 acre tract in Hopkins County, and had [*sic*] I had purchased material and performed labor, as well as paying other persons to help in so doing. [Troutmen] told me she would sign a deed to the 136.370 acres, naming me as grantee, and I could keep the deed or file it if she did not pay me the value of materials and labor I had put into the frame house. To my recollection, this conversation occurred in 2001, after the divorce petition was signed. I waited—but I received neither deed nor money until a Sunday, or about February 24, 2002, when my brother Albert Braneff and I went to my post office box in Hearne, Texas, where he sometimes received mail also. I got some mail out of the post office box, and we went together to the Dixie Café in Hearne, Texas, for breakfast. I opened the envelope which is copied as Defendant's Exhibit 4 in the criminal proceeding in Hopkins County.[2] I took out the deed which I was later accused of forging. I let my brother Albert look at it.[3] I expressed surprise and pleasure at receiving it. A waitress, Alana Cortez, asked me why I looked excited. However, as I thought my former wife might send the money, and in view of what she said about holding it, I did not file it for record until April 21, 2003. As I testified in my criminal trial, I showed the deed to the Bryan police, to my attorney, and to others, including persons in the Sheriff's Office in Hopkins County, who all advised me that it was genuine, before I filed it for record.

Braneff asserts that he has raised a fact issue on the lack-of-probable-cause element with evidence that the motives, grounds, beliefs, or other information upon which Troutmen acted did not constitute probable cause. His theory is that, out of her hostility toward him, either Troutmen or others acting in concert with her created the forged April 21, 2003 deed and sent it to Braneff with the expectation that he would use

---

[2] The envelope was from the law firm of Troutmen's divorce attorney.

[3] Albert's testimony in Braneff's criminal trial corroborated Braneff's explanation for how he received the April 21, 2003 deed.

it and she would have an excuse to have him prosecuted. In simpler terms, Braneff is alleging that Troutmen attempted to frame him for the forged deed. Braneff asserts that, in addition to the above evidence, the following summary-judgment evidence (from his affidavit) raises a fact issue on Troutmen's state of mind as to lacking probable cause:

- Braneff helped out Troutmen in her law practice in Bryan, where he observed her use audio and video dubbing equipment to created forged sound recordings. He also observed her using a photocopier to create forged documents:

  I also had occasion to be present when she was creating false documents by cutting portions out of a Xerox or other photographic process copy of one document, taping it to another page over printing on another document, and copying it to create a new document which she would use in evidence as an original, or as a copy of an original document in her litigation practice. It would have been easy for her to create an envelope with her attorney's return address, and to create the deed which I was charged with forging, in order to attempt to get me in trouble. I also saw her practicing writing the signatures of others until she could create a good copy of someone's signature and place it on a document to that person's detriment.

- Troutmen forged Braneff's signature on a post-divorce claim for dental expense benefits and on the contract for deed between them and their daughter.

- Troutmen made many complaints about Braneff to various law enforcement officers in Brazos and Robertson Counties, but Braneff was never arrested on any charge.

- Troutmen claimed that Braneff had burned two houses that were on his Robertson County property and that were burned down on November 22, 2002, while Braneff was on his way to Louisiana. Braneff was questioned by Robertson County sheriff's deputies about those fires.

- Troutmen accused Braneff of burning down the house on the Hopkins County land, and when Braneff was not arrested for it, she accused their daughter's husband for burning it down as a favor to Braneff. In a telephone conversation Troutmen told Braneff that he had done her a favor by burning down that house

because she received $90,000 in insurance, but Braneff told her he had nothing to do with the house burning.  Before then, Troutmen, accompanied by her new husband, visited Braneff and tried to persuade him to burn the Hopkins County house, saying that she would get $80,000 for the house and for the divorce partition.  Braneff declined, even though Troutmen pointed out that turpentine could be used as the accelerant and would be undetectable because the house was largely made of pine wood.

- Braneff was questioned by a Robertson County sheriff's deputy about Troutmen wanting to have Braneff killed.

Finally, Braneff points to the July 8, 2002 affidavit of Orvil Schrum,[4] Troutmen's brother, who discusses Troutmen's attempts to persuade Schrum to kill Braneff or have someone kill Braneff:  "For the past three years, my sister Ann has been attempting to persuade me to kill Ron Braneff, either as a favor to her or for money, or, if I would not do so, to employ someone else to do so."  Schrum's affidavit discusses several specific attempts.  It concludes with the following:

> Also I recall that in the Spring of last year, 2001, at her office in Brazos County, Texas, Ann requested me to be a false witness that Ron beat her up and cut her, but I did not see that and could not so testify. This was before she drove with me over to see Ron.  By the time I got to Robertson County where Ron was living, I had chickened out completely. Ann said she wanted me as a witness because she was going to claim that Ron hurt her, so that she could obtain a restraining order.  She called the police by dialing 911.  When the Robertson County Sheriff's Officers came, I told them that I was there the whole time and had not seen Ron harm Ann in any way.

The critical question is Troutmen's state of mind.  *See Kroger*, 216 S.W.3d at 795 ("Although the critical question in this case was Kroger's state of mind, Suberu

---

[4] At the summary-judgment hearing, Troutmen orally objected to Schrum's affidavit as irrelevant, and the trial court sustained the objection.  However, objections to summary-judgment evidence must be in writing.  *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex. 1979).  Schrum's affidavit is thus before us.

produced no evidence that Kroger initiated her prosecution on the basis of something other than a reasonable belief that she was guilty.").

The above evidence must be viewed in the light most favorable to Braneff, the nonmovant. *See Ridgway,* 135 S.W.3d at 601. We conclude that Braneff has rebutted the probable-cause presumption by producing some evidence that the motives, grounds, beliefs, or other information on which Troutmen acted did not constitute probable cause. *See Kroger,* 216 S.W.3d at 793; *Digby v. Texas Bank,* 943 S.W.2d 914, 925 (Tex. App.—El Paso 1997, writ denied). He produced evidence of prior bad relations with Troutmen, her alleged preexisting debt to him, and her private motivation to harm him. *See Kroger,* 216 S.W.3d at 795; *see also South Texas Freightliner, Inc. v. Muniz,* 288 S.W.3d 123, 133-34 (Tex. App.—Corpus Christi 2009, pet. denied); *Tranum v. Broadway,* 283 S.W.3d 403, 415-16 (Tex. App.—Waco 2008, pet. denied) (plurality op.). Accordingly, granting a no-evidence summary judgment on this element was error.

**Malice**

A plaintiff must establish that the defendant acted with malice, which is defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others. *Digby,* 943 S.W.2d at 922. It is proved by direct or (usually) circumstantial evidence. *Id.* The absence of probable cause can provide circumstantial evidence of a hostile or malicious motive. *Id.* at 923.

Troutmen's traditional motion sought summary judgment on the malice element with Gilmore's and Long's deposition testimony that they both had the opinion that Troutmen was not acting with malice toward Braneff. Braneff argues that the same

evidence relating to Troutmen's lack of probable cause is evidence that creates a fact issue on malice. We must consider all the evidence in the light most favorable to Braneff, indulging every reasonable inference in favor of him and resolving any doubts against Troutmen's motion. *See Mayes*, 236 S.W.3d at 756. We agree with Braneff; a genuine issue of material fact exists. *See Digby*, 943 S.W.2d at 925-26; *see also Tranum*, 283 S.W.3d at 418. Accordingly, either a traditional or no-evidence summary judgment on the malice element was error.

We sustain Braneff's two issues, reverse the trial court's judgment as to Braneff's claim for malicious prosecution, and remand this case for further proceedings.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray concurring with opinion)
Reversed and remanded
Opinion delivered and filed November 17, 2010
[CV06]