RENDERED: DECEMBER 17, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0691-RR

BETH LEWIS MAZE                                         APPELLANT

V.                            IN SUPREME COURT

JUDICIAL CONDUCT COMMISSION                    APPELLEE

## OPINION OF THE COURT BY JUSTICE VANMETER

## AFFIRMING

### I.      FACTUAL AND PROCEDURAL BACKGROUND.

On September 18, 2017, Beth Lewis Maze, then Judge of the 21st Judicial Circuit, 2nd Division,[1] learned her ex-husband had been arrested on several criminal charges including possession of a controlled substance. Judge Maze intervened in the matter by attempting to order drug tests at hospitals in two nearby counties. By letter dated November 17, Judge Maze self-reported to the Judicial Conduct Commission ("Commission"). This letter set off a series of

---

[1] The 21st Judicial Circuit is comprised of Bath, Menifee, Montgomery and Rowan Counties.

events ultimately leading to Judge Maze being criminally indicted,[2] and the Commission bringing six counts of judicial misconduct against her. After a prolonged pre-hearing process, including Judge Maze's interlocutory appeal to this Court in an attempt to stay the Commission's hearing pending resolution of her criminal case,[3] the Commission held its hearing on October 28-30, 2019, following which the Commission entered its Findings of Fact, Conclusions of Law and Final Order. We quote the following pertinent parts of that Order:

**COUNT I**

On September 18. 2017, [Judge Maze] learned her ex-husband had been arrested on several criminal charges including possession of a controlled substance. [Judge Maze] immediately made several attempts to contact the Bath County Jailer Earl Willis to obtain information on his arrest. After making contact with Mr. Willis [Judge Maze] contacted pre-trial services in an attempt to secure a pre-trial officer from outside of [Judge Maze's] Judicial Circuit to conduct [her] ex-husband's pre-trial interview. [Judge Maze] then contacted District Judge William Roberts to discuss the matter only to be advised that neither he nor Judge Donald Blair would preside and that the matter would be referred to the Chief Regional Judge for the appointment of a Special Judge.

Jailer Willis then made contact with [Judge Maze] and informed her he was assisting [Judge Maze's] ex-husband in obtaining a drug test from St. Joseph Hospital in Mt. Sterling, Kentucky. Jailer Willis informed [Judge Maze] that the hospital would not administer the drug test without a court order. In response, [Judge Maze] issued an Order to St. Joseph Hospital to

---

[2] Judge Maze has been indicted in Bath Circuit Court for two counts of Forgery in the Second Degree, in violation of KRS 516.030, and one count of Tampering with Public Records, in violation of KRS 519.060. All of the charged offenses are Class D felonies, punishable by imprisonment of 1 to 5 years, KRS 532.020(1)(a), and fines between $1,000 and $10,000. KRS 534.030(1).

[3] *Maze v. Kentucky Judicial Conduct Comm'n*, 575 S.W.3d 204 (Ky. 2019), *cert. denied* 140 S. Ct. 517 (2019).

2

perform the drug screen. When St. Joseph refused to perform the drug screen, [Judge Maze] issued a second Order to Clark County Medical Center in a second attempt to allow her ex-husband to obtain the drug screen he desired. While under arrest and in the custody of Jailer Willis [Judge Maze] had direct communication with her ex-husband by telephone. [Judge Maze] failed to report this communication to the Commission in her self-report.

[Judge Maze's] disqualification was mandatory and there otherwise was no necessity established for her intervention in her ex-husband's criminal case. At no time was there a necessity that [Judge Maze] act as a Judge in this matter.

By a vote of 5-0, the Commission finds with respect to Count I that [Judge Maze] violated SCR 4.020(1)(B)(i) and that the actions of [Judge Maze] constituted misconduct in office. Furthermore. [Judge Maze's] actions violated SCR 4.300 and the relevant portions of the following Canons of the Code of Judicial Conduct, as they existed at the time of the violation[4]:

Canon 1 in that [Judge Maze] failed to maintain high standards of conduct and uphold the integrity and independence of the Judiciary;

Canon 2A in that [Judge Maze] failed to respect and comply with the law and to act at all times in a manner that promotes public confidence in the integrity and impartiality of the Judiciary;

Canon 2D in that [Judge Maze] lent the prestige of Judicial Office to advance the private interests of others;

Canon 3B(7) in that [Judge Maze] initiated or considered *ex parte* communications with parties and;

Canon 3E(l) in that [Judge Maze] failed to disqualify herself in a proceeding in which [Judge Maze's] impartiality might reasonably be questioned.

---

[4] In September 2017, Kentucky's Code of Judicial Conduct, SCR 4.300, was based on the 1990 Model Code of Judicial Conduct. In January 2018, the Kentucky Supreme Court revised the SCR 4.300 to adopt the 2007 version of the Code of Judicial Conduct.

## COUNT II

On September 18, 2017, [Judge Maze] completed the first of two generic-form court orders by hand-writing instructions to St. Joseph Hospital in Mt. Sterling Kentucky to perform drug testing for the benefit of her ex-husband. When St. Joseph Hospital refused to honor the Order, Respondent completed and executed a second form Order in the same fashion. Respondent never presented either of these Orders to the Circuit Clerk for entry in the record of the criminal case against her ex-husband.

By a vote of 5-0, the Commission finds with respect to Count II that [Judge Maze] violated SCR 4.020(1)(B)(i) in that the actions of [Judge Maze] constituted misconduct in office. Further, [Judge Maze]'s actions violated SCR 4.300, the Code of Judicial Conduct and the relevant portions of the following Canons of the Code of Judicial Conduct as they existed at the time of the violation:

Canon I in that [Judge Maze] failed to maintain and enforce high standards of conduct and did not personally observe those standards so that the integrity and impartiality of the Judiciary would be preserved;

Canon 2A in that [Judge Maze] did not respect and comply with the law and did not act at all times in a manner that promotes public confidence in the integrity and impartiality of the Judiciary and;

Canon 3E(l) in that [Judge Maze] failed to disqualify herself in a proceeding in which the Judge's impartiality might reasonably be questioned.

## COUNT III

On September 18, 2017, [Judge Maze] issued two separate Orders for a drug screen to St. Joseph Hospital and Clark County Medical Center, respectively. On the first Order [Judge Maze] wrote "Commonwealth Att. & Bath Co. Attorney" on the "Attorney for the Plaintiff" signature line indicating that both attorneys had seen and agreed to the Order and its contents. [Judge Maze] additionally placed Attorney Michael Campbell's name on the "Attorney for Defendant" signature line. On the second Order [Judge Maze] wrote, "Bath County

4

Attorney" on the "Attorney for the Plaintiff" signature line, indicating that the Bath County Attorney had seen and agreed to the order and its contents. The prosecutors and Michael Campbell testified they never saw or agreed to either of the Orders.

[Judge Maze] never informed the Commonwealth Attorney or County Attorney that she had placed their names on these Orders. [Judge Maze] contacted Michael Campbell on September 19, 2017 to ask him to represent her ex-husband but did not tell him that she had placed his name on one of these Orders as counsel for her ex-husband.

By a vote of 5-0, the Commission finds with respect to Count III that [Judge Maze] violated SCR 4.020(1)(B)(i) and that the actions of [Judge Maze] constituted misconduct in office. Furthermore, [Judge Maze]'s actions violate SCR 4.300 and the relevant portions of the following Canons of the Code of Judicial Conduct, as they existed at the time of the violation:

Canon 1 in that [Judge Maze] failed to maintain and enforce high standards of conduct and did not personally observe those standards and did not uphold the integrity and impartiality of the Judiciary;

Canon 2A in that [Judge Maze] failed to respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the Judiciary and;

Canon 3B(2) in that [Judge Maze] failed to be faithful to the law and maintain professional competence in it.

## COUNT IV

Throughout the preliminary investigation of this matter up to and including the hearing, [Judge Maze] failed to disclose her actions as described in Count III to the Commission. At no time did [Judge Maze] acknowledge placing the titles of the Commonwealth/County Attorney or the name of Michael Campbell on these form Orders. A review of the form Orders in question shows that they are quite distinguishable from a different form Order [Judge Maze] said she meant to use. However, that form, unlike the form she did in fact use, does

not contain a seal of the Commonwealth at the top and the two form Orders do not look similar.

Of even greater concern is that neither of the Orders was ever entered of record in the Circuit Clerk's Office nor distributed to the parties as required by the Rules of Criminal

Procedure. This unrefuted fact renders [Judge Maze's] explanation that she was confused by an outdated form unpersuasive. Because [Judge Maze] prevented the entry of the Orders, the clerk could not distribute them, and they never were distributed by anyone, to anyone, until [Judge Maze] sent them to the Commission. An argument that [Judge Maze] mistook these signature lines for distribution lines defies logic because it is contradicted by her subsequent conscious decision to withhold them from the clerk, thereby preventing the distribution. Insisting on this dubious reasoning undermines the credibility of [Judge Maze's] representation that she was confused by the form.

By a vote of 5-0, the Commission finds with respect to Count IV that [Judge Maze] violated SCR 4.020 (1)(B)(i) and that the actions of [Judge Maze] constituted misconduct in office and violated SCR 4.300, the Code of Judicial Conduct, in that [Judge Maze] failed to observe high standards of conduct in violation Canon 2, Rule 2.16 requiring judges to cooperate with the Commission, which includes acting candidly and honestly.

## COUNT V[5]

The Commission by a vote of 5-0, concludes that the charge in Count V was not proven by clear and convincing evidence. Therefore, Count V is dismissed.

## COUNT VI

On November 29, 2018, just four (4) days before [Judge Maze's] hearing before the Commission was set to commence, [Judge Maze], who was suspended from her Judicial duties and who had no authority to communicate with Judge Eddy Coleman regarding the text message for any reason, made *ex*

---

[5] Count V related to a large number of drug trafficking cases indicted by the Bath Circuit Grand Jury.

*parte* contact with Judge Coleman, a sitting member of the Judicial Conduct Commission, regarding the Commission's denial of a Motion filed by Counsel for [Judge Maze] in the proceedings pending against [Judge Maze]. Specifically, [Judge Maze] sent a text message to Judge Coleman stating "Eddy, Kim Tabor just sent this to me. It is from Deanna Roberts and she is so afraid." The text message included a screenshot from a previous text message purportedly sent from Deanna Roberts to

Kim Tabor, a witness in the Commission's proceedings. This second message said, "WTF did you say?" This referred to a screenshot of a November 29, 2018, Commission Order denying a Motion to seal Kim Tabor's deposition testimony. [Judge Maze]'s *ex parte* contact with Judge Coleman prompted his recusal from sitting in these proceedings on the charges against [Judge Maze].

By a vote of 5-0, the Commission finds with respect to Count VI that [Judge Maze] violated SCR 4.020 (1)(B)(i) and that the actions of [Judge Maze] constituted misconduct in office and violated SCR 4.300, the Code of Judicial Conduct, in that [Judge Maze] violated:

Canon 1, Rule 1.1 in that [Judge Maze] failed to comply with the law;

Canon 1, Rule 1.2 in that [Judge Maze] failed to act at all times in a manner that promotes public confidence, independence. integrity and impartiality of the Judiciary;

Canon 1, Rule 1.3 in that [Judge Maze] used or attempted to use her position to gain personal advantage or deferential treatment;

Canon 2, Rule 2.8 in that Respondent criticized the fact finders about their decision other than in a court order or opinion in a proceeding and;

Canon 2. Rule 2.9 in that [Judge Maze] initiated or engaged in *ex parte* communications and failed to make reasonable efforts, as much as was within her control, to refrain from engaging in *ex parte* communications with other court officials involved in a case.

Following the Commission's denial of Judge Maze's motion to alter amend or vacate its final Order, Judge Maze appealed to this Court. SCR 4.290.

## II.    STANDARD OF REVIEW.

In proceedings before the Commission, charges are required to be proven by clear and convincing evidence. SCR 4.160. On appeal to this Court, we "must accept the findings and conclusions of the commission unless they are clearly erroneous; that is to say, unreasonable." *Wilson v. Judicial Ret. & Removal Comm'n*, 673 S.W.2d 426, 427–28 (Ky. 1984); (citing *Long v. Judicial Ret. & Removal Comm'n*, 610 S.W.2d 614 (Ky. 1980)). By rule, on any judge's appeal, we have broad power to "affirm, modify or set aside in whole or in part the order of the Commission, or to remand the action to the Commission for further proceedings." SCR 4.290(5).

## III.    ANALYSIS.

In her appeal, Judge Maze raises three general issues. First, whether the Commission retained jurisdiction following Judge Maze's retirement on October 24. Second, whether the Commission's pre-hearing errors, as alleged by Judge Maze, mandate voiding of the Commission's proceedings and sanction. Third, whether the Commission made errors during the hearing that entitle Judge Maze to either a new hearing or reversal.

8

### A. The Commission Retained Jurisdiction following Judge Maze's Retirement.

By letter dated "October 24, 2018" [sic] addressed to Governor Matt Bevin, Judge Maze stated "[e]ffective midnight on October 27, 2019, I am retiring as Circuit Judge for the 21st Judicial Circuit." The Chief Justice received a copy of this letter on October 24, 2019. By virtue of her resignation, Judge Maze argues, as she did before the Commission, that it lost jurisdiction over her. Her argument is based on the Kentucky Constitution's provision creating the Commission, that "[s]ubject to rules of procedure to be established by the Supreme Court, and after notice and hearing, any justice of the Supreme Court or judge of the Court of Appeals, Circuit Court or District Court may be retired for disability or suspended without pay or removed for good cause by a commission." Ky. Const. § 121. In addition, Judge Maze cites various sections of the Supreme Court Rules to the effect that the Commission only has jurisdiction over actively serving judges; not retired judges. SCR 4.010(c) (defining "judge"); SCR 4.020(b) (Commission's authority to impose sanctions on any judge); SCR 4.170 (notice to "judges," as opposed to former judges).

As pointed out by the Commission, Judge Maze ignores the provision of SCR 4.025 which clearly and unambiguously provides,

> (1) **The Commission shall have the authority set out in SCR 4.020 without regard to separation of a judge from office** or defeat of a candidate in an election, except as specifically limited in SCR 4.000 to SCR 4.300.

9

. . .

(3) For any violation other than a campaign violation, the authority of the Commission to take action against a judge who has left office shall be barred unless notice of preliminary investigation pursuant to SCR 4.170 has been issued within 180 days after the date the judge leaves office.

(4) Nothing in SCR 4.000 to 4.300 shall bar proceedings against sitting judges who have left judicial office after a prior term of office concerning conduct not previously adjudicated by the Commission, including conduct which occurred during a prior term or terms of office.

(emphasis added). The language of the Constitution, quoted above, permits this Court, by rule, to empower the Commission to adjudicate charges against justices and judges, including those who retire/resign, are defeated for re-election, and even lawyers who unsuccessfully aspire to judicial office with respect to campaign violations. SCR 4.000.

The Commission correctly ruled that it had continuing jurisdiction over Judge Maze following her separation from office.[6]

### B. Pre-Hearing Alleged Errors.

1. <u>Notice with Respect to an Anonymous Unsigned Complaint (JCC Case No. 254) dated November 15, 2017.</u>

Judge Maze claims that the Commission erred in failing a) to strike an anonymous and unsigned complaint, b) to conduct a preliminary investigation,

---

[6] *McDonald v. Ethics Comm. of the Ky. Judiciary*, 3 S.W.3d 740 (Ky. 1999), does not support Judge Maze's jurisdiction argument. The issue in *McDonald* concerned whether the Code of Judicial Conduct, specifically then Canon 5's political activities clause, could limit retired judges' free speech rights, *i.e.*, the endorsement of nonpartisan judicial candidates. The Court analyzed the prohibition against First Amendment guarantees of free speech. 3 S.W.3d at 743–45. The opinion in no way limits the Commission's authority to adjudicate and impose sanctions on a retired judge for ethical violations occurring while she was actively serving as a judge.

10

c) to permit her to appear informally before the Commission, and d) to comply with notice and service requirements.

As to these claims, the record discloses that Judge Maze, by letter dated November 15, 2017, self-reported the incidents that underlie the Commission's proceedings. The Commission further invited Judge Maze to appear at an informal conference before the Commission on January 26, 2018. Judge Maze acknowledges that she attended with counsel, and Judge Maze sent a six-page follow-up letter, dated February 28, 2018, to the Commission. On March 20, 2018, the Commission delivered its factual file to Judge Maze's then counsel.

The Commission argues that the basis for the charges against Judge Maze were the details set out in her letter, dated November 17, 2017, that the anonymous complaint played no role in the proceedings, and that, in any event, the complaint was merely duplicative of the matters Judge Maze self-reported. While the record supports Judge Maze's claim that she sought to strike the anonymous complaint, she fails to disclose where in the record this complaint appears. *McDaniel v. Commonwealth*, 341 S.W.3d 89, 96 (Ky.2011) ("Appellant's duty [is] to designate the contents of the record on appeal[]"); *Chestnut v. Commonwealth*, 250 S.W.3d 288, 303 (Ky.2008) (It is incumbent upon Appellant to present the Court with a complete record for review[]"). We have often noted that a silent record supports the trial court's decision. *McDaniel*, 341 S.W.3d at 96; *Chestnut*, 250 S.W.3d at 303.

The record supports that the Commission complied with SCR 4.170. The Commission received information that indicated a basis for investigating a

matter within the jurisdiction of the Commission. SCR 4.170(1).[7] This information came from Judge Maze's letter. The contents of the letter largely made a preliminary investigation unnecessary. This situation stands in contrast, for example, to a situation in which an allegation is made that a judge acted improperly, and the Commission might be required to send an investigator to determine the factual basis or to obtain a tape recording of judicial proceedings. Notice was provided to Judge Maze and she was invited to appear informally on January 26, 2018. SCR 4.170(2) was thereby satisfied, as was SCR 4.170(4) when the Commission delivered the factual file to Judge Maze's counsel.

2. <u>Failure to Permit Judge Maze to Appear before Commission with Respect to Counts III, IV and V.</u>[8]

The Commission initiated Formal Proceedings against Judge Maze on May 21, 2018. A notice of Formal Proceedings and Charges was issued and served on Judge Maze's counsel. Two Counts were set out, based on Judge Maze's actions intervening in a criminal case against her ex-husband and signing and issuing Orders in the case. Judge Maze, by counsel, answered the charges in August 2018. On September 10, 2018, the Commission amended its Notice to add two additional counts related to the initial counts. Count III

---

[7] The rule permits the Commission to make a preliminary investigation upon its own motion or upon a written complaint. This rule is broad and permits the Commission to begin an investigation based on a newspaper story, a television report, a social media post, a written complaint or even an anonymous complaint. Obviously, an anonymous complaint may be lacking in sufficient detail to permit an investigation or to enable the Commission to follow up with the sender, but that does not require dismissal of an anonymous report. Sad to say, judicial retaliation is not unknown in our Commonwealth.

[8] As noted above, the Commission dismissed Count V as not proven by clear and convincing evidence. Any allegations or claims with respect to this Count are therefore moot and do not merit further discussion.

12

related to Judge Maze's writing "Bath Co. Attorney" and/or "Commonwealth Att." on the "Attorney for the Plaintiff" signature lines of the Orders, and "Michael Campbell" on the "Attorney for Defendant" signature line of the second Order. Count IV alleged Judge Maze's failure to disclose the actions described in Count III and charged her with failure to cooperate with the Commission, including acting candidly and honestly. Apparently, these Counts were filed after the Commission became aware of a televised interview Judge Maze gave with a Lexington television station in August 2018.

Judge Maze argues that she was entitled to appear informally before the Commission with respect to these Counts. SCR 4.170(2). Another rule, however, provides, the following:

> The notice or answer may be amended to conform to proof or to set forth additional facts, whether occurring before or after the commencement of the hearing. In case such an amendment is made, the judge shall be given reasonable time both to answer the amendment and to prepare and present his defense against the matters charged thereby.

SCR 4.190.

Reading these two rules together, a judge is entitled to one informal conference at the beginning of an investigation. SCR 4.170. The purpose of the rule is to permit the Commission and judge to discuss and resolve the matter without the initiation of contested Formal Proceedings.[9] Following the initiation of Formal Proceedings, if the Commission becomes aware of additional matters that constitute violation of SCR 4.020, as occurred in this

---

[9] By way of reference, most complaints filed with judicial conduct commissions are dismissed. *See* Cynthia Gray, *How Judicial Conduct Commissions Work*, 28 Just. Sys. J. 405, 408 (2007) (estimating that generally 90% of complaints are dismissed).

case violations of the Code of Judicial Conduct (SCR 4.300), SCR 4.190 permits amendment of the Notice. No additional informal conference is required, just the provision of a reasonable time to give the judge an opportunity to respond and defend. No claim can be made that Judge Maze did not have a reasonable time to prepare. Not only was the hearing delayed until October 2019, over thirteen months after the amended Notice, but also Judge Maze, by virtue of her televised interview, was the source of the information.

The Commission did not err by denying Judge Maze's motion for an additional informal conference.

3. <u>Failure to Require Commission Member Judge Eddy Coleman to Answer Questions.</u>

Judge Maze's hearing before the Commission was initially scheduled to begin on December 3, 2018. Just four days before the hearing, on November 29, 2018, Judge Maze sent a text message to Judge Coleman, including a screenshot of an earlier message from Deanna Roberts to Kim Tabor. The screenshot of the text originating with "Dee" included 1) a photo of the Commission's Order of November 29 which, among other items, denied Judge Maze's motion to seal the deposition of Kim Barker Tabor to prevent retaliation, and 2) the comment, "WTF did u say?" Judge Maze's message to Judge Coleman was "Eddy, Kim Tabor just sent this to me. It is from Deanna Roberts & she is so afraid." Judge Coleman immediately informed the other Commission members and recused from further participation in the proceeding against Judge Maze. As a result of this event, the Commission amended the Formal Notice to add Count VI. Judge Maze answered and attempted to justify her action as the reporting of a crime, Intimidating a Participant in the Legal

14

Process (KRS 524.040), or the mandatory reporting of a crime, Misprision of Felony (18 U.S.C. § 4), or as protected reporting under the Whistleblower Act (KRS 61.101 *et seq.*).

Judge Maze deposed Judge Coleman prior to the Commission's hearing. During the deposition, counsel attempted to ask Judge Coleman a number of questions requesting Judge Coleman's opinion as to whether Deanna Roberts's text to Kim Tabor constituted a crime, or whether Judge Maze had an obligation to report this text. Judge Coleman, through his counsel, declined to answer the questions on the basis that Judge Maze had filed a civil action in federal court under 42 U.S.C. § 1983 against Judge Coleman and the other members of the Commission, as to which action a motion to dismiss was then pending. Judge Coleman further objected that questions to a judge, stating a fact pattern and requesting an opinion are inappropriate.

In adjudicating this Count, the Commission in its Conclusions of Law noted the *ex parte* nature of the contact and that during the proceedings Judge Maze had acknowledged that *ex parte* communications are generally prohibited. It further stated,

> It should be noted again that at the time of this *ex parte* communication Judge Maze was suspended as a Judge and therefore had no duty to contact Judge Coleman. It is further noted that no evidence was presented at the hearing, other than the witness' unsubstantiated perception, that she was being threatened or was facing imminent harm or danger. The evidence was that one of the people of whom the Circuit Clerk apparently was fearful exchanged Christmas gifts with her last year.
>
> Rule 4.130(l) reads in part as follows, "upon the filing of an Answer to a notice of formal proceedings or the expiration of time for filing an Answer, the Notice and all subsequent pleadings filed with the Commission shall not be confidential." As such there is no way that evidence in a hearing before the Judicial Conduct Commission could ever be made confidential as that would be

15

contrary to the Rules of the Supreme Court under which this Commission operates. For a Judge to contact a sitting member of this Commission four (4) days before a hearing is scheduled to begin in an *ex parte* manner is a blatant violation of the rules. The member of this Commission recognized the gravity, as he immediately recused from this action. Judge Maze has never accepted that she was wrong in contacting Judge Coleman. She has consistently maintained that she was acting as a whistleblower reporting to her Chief Regional Judge that a potential crime was being committed or that someone was interfering with the proper administration of justice. Why she did not let her attorney handle this matter is unknown. Why she would not report, or more importantly advise the individual to report this matter to the appropriate law enforcement authorities is unknown. What she expected her Chief Regional Judge to do to protect a scared witness is unknown. What is clear is that she caused a member of this Commission to have to recuse from hearing the charges against her. That is problematic.

*In re: the Matter of Maze*, Findings of Fact, Conclusion of Law and Final Order, Nov. 7, 2019, pp. 15–16.

We agree with the Commission that in this instance, Judge Maze's questions to Judge Coleman were inappropriate. At the point in time that she texted him—four days prior to a hearing in which he was sitting as a fact-finder—she was certainly aware of his role and that communication with him was improper. She could have easily informed her counsel, who could have then filed an appropriate pleading with the Commission, or advised Ms. Tabor to notify appropriate law enforcement authorities. Any speculation by Judge Coleman as to Deanna Roberts's motives, Kim Tabor's mental state, or even Judge Maze's thought process in texting him have no bearing on the factual occurrence that he received an inappropriate *ex parte* communication days before a contested hearing.

Judge Maze's citation to SCR 4.020(2) as necessitating proof of her purported good faith in texting Judge Coleman is inapposite. This rule

16

provides, "[a]ny erroneous decision made in good faith shall not be subject to the jurisdiction of the Commission." This section's purpose is to merely make clear that normal legal decisions made by a judge, in her judicial role as a judge, are not subject to review by the Commission; instead litigants and lawyers are required to abide by appellate processes to contest erroneous decisions. *See Nicholson v. Judicial Ret. & Removal Comm'n*, 562 S.W.2d 306, 310 (Ky. 1978) (stating "incompetence which is not gross and persistent can be safely left to elimination at the ballot box. Error can be adequately corrected by the appellate courts. Any other approach . . . would destroy judicial independence by causing judges to keep one eye on their reversal rate and the other on the Commission[]"). In this instance, Judge Maze was a litigant in an administrative proceeding, not a judge acting in a judicial role. SCR 4.020(2) has no application to this case.

4. The Commission's Subpoenaing Grand Jury Testimony relating to Judge Maze's Criminal Indictment.

Following Judge Maze's television interview in which she admitted to completing the attorneys' signature lines on the two Orders and not filing those documents in the case file, Judge Maze was indicted criminally. After the indictment was made public, counsel for the Commission issued a subpoena duces tecum to Judge Maze's Special Prosecutor requesting production of the grand jury recording. The Special Prosecutor produced the testimony and counsel delivered a copy of the recording to Judge Maze's counsel.

Judge Maze complains that the Commission's counsel improperly subpoenaed this grand jury testimony in violation of RCr[10] 5.24(1).[11] The Rule states:

> Subject to the right of a person indicted to procure a transcript or recording as provided by Rule 5.16(3), and subject to the authority of the court at any time to direct otherwise, all persons present during any part of the proceedings of a grand jury shall keep its proceedings and the testimony given before it secret, except that counsel may divulge such information as may be necessary in preparing the case for trial or other disposition.

"By contrast" the Commission points out that "both SCR 4.030 and KRS 34.330 grant similar powers to the Commission power to administer necessary oaths, take testimony under oath, compel the attendance of witnesses, and **compel the production of records and other evidence**." KRS 34.330 (emphasis added). The Commission also notes that while the Civil Rules apply to Commission proceedings, to the extent not inconsistent with the Supreme Court Rules, SCR 4.160, no such reference to the Criminal Rules is stated.

In looking at the Kentucky Constitution, grand jury proceedings are referred to only twice. Once in Section 12, which requires an indictment for a felony,[12] and once in Section 248, which sets the number of grand jury members at 12 and requires nine votes to return an indictment. No Kentucky constitutional provision, or statute, for that matter, mandates secrecy for grand

---

[10] Kentucky Rules of Criminal Procedure.

[11] Judge Maze also cites two federal circuit court cases, *In re Grand Jury, 89-4-72*, 932 F.2d 481 (6th Cir. 1991), and *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019), addressing the secrecy and disclosure provisions of Federal Rules of Criminal Procedure. Since these cases address the federal rules, they have no bearing on our decision.

[12] The text states, "[n]o person, for an indictable offense, shall be proceeded against criminally by information[.]" Ky. Const. § 12.

18

jury proceedings.  Nineteenth century Kentucky opinions of our predecessor court recognized this.  *See Commonwealth v. Skeggs,* 66 Ky. (3 Bush) 19, 20–21 (1867) (holding testimony of jurors was incompetent to explain or impeach their findings or verdict; court's holding was made as a matter of policy, but not because of secrecy); *White v. Fox,* 4 Ky. (1 Bibb) 369, 370 (1809) (noting that since repeal of law imposing secrecy on grand jurors, testimony of a grand juror was permissible).  In *Bazzell v. Illinois Cent. R. Co.*, 203 Ky. 626, 262 S.W. 966, 967 (1924), the Court noted the earlier lack of secrecy but explained that secrecy had been adopted as policy under the Criminal Code.  In other words, secrecy is mandated by our rules as a matter of general policy,[13] although exceptions exist.  For example, any person indicted may obtain a copy of the recording, RCr 5.16(3), and the circuit court may direct disclosure.  RCr 5.24(1).

This Court has noted many times the public policy considerations undergirding the Commission and its proceedings.  It is charged with

---

[13] Four general reasons are advanced for grand jury secrecy:

    1.  The grand jurors should be free from the apprehension that their opinions and votes may subsequently be disclosed by compulsion;

    2. The complainants and witnesses summoned should be free from the apprehension that their testimony may be subsequently disclosed by compulsion so that the state may secure willing witnesses;

    3. The guilty accused should not be provided with information that might enable him to flee from arrest, suborn false testimony, or tamper with witnesses or grand jurors;

    4. The innocent accused, who is charged by complaint before the grand jury but exonerated by its refusal to indict, should be protected from the compulsory disclosure of the fact that he has been groundlessly accused.

Richard M. Calkins, *Grand Jury Secrecy*, 63 Mich. L. Rev. 455, 458 (1965).  Similar reasons were noted in *United States v. Amazon Indus. Chem. Corp.*, 55 F.2d 254, 261 (D. Md. 1931).

investigating and sanctioning judges for misconduct in office and violations of the Code of Judicial Conduct. SCR 4.020(1)(b)(i),(v). The purpose, of course, is to ensure to the public that our judiciary is competent, deliberative, fair, independent, and impartial. These goals are reflected in the Preamble to the Code of Judicial Conduct, SCR 4.300:

> [1] An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States and Kentucky legal systems are based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the Rules contained in this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system.
>
> [2] Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence.

To the extent tension or inconsistency exists between our rules establishing 1) the Commission's investigative powers and 2) grand jury secrecy, we hold, in this instance, that the Commission's investigative powers take precedence. In reaching this decision, we note that the criminal indictment was already public, and Judge Maze was entitled to a copy of the grand jury testimony. The importance of secrecy is lessened following release of the indictment. 38 Am. Jur. 2d *Grand Jury* § 41. Judge Maze was therefore not prejudiced by the release of the testimony to the Commission or its counsel. Furthermore, Judge Maze's own statements in her televised interview appear to have been the impetus which lead to the indictment. Finally, if a judge is indicted, nine citizens believe that testimony, at a minimum, has

established probable cause that the judge has committed a felony. No one should therefore be surprised that the Commission might be interested in the testimony or proof that generated such a finding; such would certainly constitute "a basis for investigation of a matter within the jurisdiction of the Commission[.]" SCR 4.170(1). We note in this regard the Commission has the authority "to suspend temporarily from the performance of judicial duties . . . any judge against whom there is pending in any court of the United States an indictment or information charging him/her with a crime punishable as a felony[.]" SCR 4.020(1)(a)(ii). The foregoing demonstrates that after an indictment is returned against a judge, the policy considerations supporting grand jury secrecy diminish whereas those for Commission investigation increase. The Commission did not err in subpoenaing the grand jury testimony.

### C. The Rule of Necessity.

When Donald Maze, Judge Maze's ex-husband, was pulled over and arrested on Monday, September 18, 2017, he was charged with Possession of a Controlled Substance, 1st Degree, 1st Offense—Cocaine (KRS 218A.1415), Tampering with Physical Evidence (KRS 524.100), Reckless Driving (KRS 189.290), Menacing (KRS 508.050) and Failure to Wear Seat Belts (KRS 189.125(6)). As disclosed by her initial self-report, Judge Maze learned of the arrest at about 6:00 p.m. from her former mother-in-law but knew nothing of the charges. Rather than recognize that any involvement in this case was inappropriate, under SCR 4.300, Canon 3(E)1, over the next two and one-half hours, Judge Maze proceeded to contact the Bath County Jailer, Earl Willis, multiple times, pre-trial services, and at least one Bath District Court Judge.

21

Her initial fear was that Maze would be in danger of serious physical injury if he were to be housed in a jail facility with other Bath County defendants due to her position and his former occupation as Bath County Attorney.

At approximately 9:15 p.m., Jailer Willis called Judge Maze from the St. Joseph Hospital in Mount Sterling, advising that the hospital would not perform a drug test without an order. Ostensibly to preserve evidence, Judge Maze prepared, signed and faxed an order for a drug test to the hospital. As previously noted, she wrote "Commonwealth Att. & Bath Co. Attorney" on the "Attorney for Plaintiff" signature line and "Michael Campbell" on the "Attorney for Defendant(s)" signature line. Both signature lines are pre-printed on a Kentucky Court of Justice form, AOC-006-3 (6-88), below the pre-printed notation: "Seen by and order of entry waived[.]" The hospital refused to perform the drug test. Jailer Willis called Judge Maze to advise her of this and to let her know that he was taking Maze to the Clark County Medical Center before he was to deliver him to the Clark County Detention Center.

This scenario repeated when Willis got Maze to the Clark County hospital slightly after 10:00 p.m. It denied testing, Willis called Judge Maze, Judge Maze prepared, signed and faxed an order to the hospital, and the hospital again refused to conduct the drug test. Judge Maze again used the same Order form for the Clark County hospital order, but only wrote "Bath Co. Attorney" underneath the pre-printed notation: "Seen by and order of entry waived:".

When Judge Maze self-reported these events to the Commission, she included the original orders. In the intervening two months, she had not filed these orders in her ex-husband's criminal case, justifying this failure "because they were not honored."

Judge Maze argues that her actions were required by the Rule of Necessity. The Rule of Necessity is recognized in the Code of Judicial Conduct:

> By decisional law, the rule of necessity may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In the latter case, the judge must disclose on the record the basis for possible disqualification and use reasonable efforts to transfer the matter to another judge as soon as practicable.

SCR 4.300, Canon 3E(1) Commentary (2017).

Judge Maze relies on the extensive testimony of former Chief Justice Lambert who testified on her behalf regarding Judge Maze's activities on the evening of September 18. With all due respect to the former Chief Justice, we agree with the Commission that nothing in the record demonstrates a need for immediate judicial action. Donald Maze was charged with five crimes, none of which depended on his level of drug intoxication. Stated another way, whether Maze had any drugs in his system would ultimately have no bearing on his culpability for any of the charges, guilty or not guilty.

In addition, even if immediate action were required, the Commentary's final sentence requires the judge to make a "disclos[ure] on the record." This, Judge Maze failed to do as she admitted by not filing the orders in the record.

### D. Denial of Due Process for Commission's Failure to Provide Judge Maze with Notice of Evidence It Was Considering.

Judge Maze's final argument is that the Commission's investigative file is much more extensive than the certified record of the Formal Proceedings. She alleges "numerous interviews by [the Commission's] investigator, some with incarcerated individuals who provided incredible information about [Judge

23

Maze].[14]  The [Commission] had access to secret Grand Jury testimony, including testimony from a KSP detective not called at the [Commission] hearing." In this regard, she appends to her brief, six questions to be asked of the Commission regarding what evidence the Commission considered, and whether either Judge Bowles or Judge Thomas had reached a conclusion following the informal conference.

While unclear, we take it that Judge Maze argues against the sufficiency of the evidence. Judge Maze wrote two letters to the Commission, November 12, 2017, and February 28, 2018. In these letters, she candidly admitted her activities on the evening of September 18, 2017. That Judge Maze wrote the letters is not in dispute. The orders she prepared and sent to the hospitals are in the record. In addition, Judge Maze gave an interview to a Lexington television station shedding more light on the events of September 18. The facts as to the events of September 18, the basis of Counts I, II and III, are undisputed. Judge Maze provided the evidence. As to Count IV, the basis of that count, similarly is Judge Maze, her letters, and televised interview, since she failed to advise the Commission that she had signed the names/titles of the attorneys involved. Finally, as to Count VI, Judge Maze initiated an *ex parte* contact with Judge Coleman on November 29, immediately prior to her first scheduled hearing. None of the facts giving rise to these allegations are

---

14 Judge Maze refers to two inmates, Sancha Hayes and Andre Burns, and statements they may have made. Judge Maze, however, does not provide any indication of what they may have testified to. Based on our review of the record, we surmise that their statements, if any, may have related to the not proven Count V. By contrast, most of the proof regarding Counts I-IV was provided by Judge Maze herself.

disputed; the proof of the facts more than satisfies the requirement of "clear and convincing evidence." SCR 4.160.

An additional issue raised by Judge Maze concerns reevaluation of the holding in *Nicholson*, 562 S.W.2d at 310, which upheld the combined investigative and adjudicative functions of the Commission. As recently as 2012, we upheld this combination of investigative and adjudicative functions. *Alred v. Commonwealth, Jud. Conduct Comm'n*, 395 S.W.3d 417, 428–29 (Ky. 2012). Both *Nicholson* and *Alred* cite *Withrow v. Larkin*, 421 U.S. 35 (1975), in which the Supreme Court of the United States held that combination of these two functions "does not, without more, constitute a due process violation[.]" *Id.* at 58. The "more" requires allegation and proof of pecuniary reward or demonstration that the Commission or one of its members was so incensed or biased against the judge as to be unable to perform their functions in accordance with the rules of the forum. *Alred*, 395 S.W.3d at 428. As in *Alred*, Judge Maze offers no persuasive evidence to overcome the presumption of lack of bias. Therefore, we find no violation of Judge Maze's constitutional rights.

## IV.    CONCLUSION.

We expect our judges to be deliberative and to exercise good judgment. "Our duty is to assure the people of Kentucky that judges will 'conduct themselves as judges.'" *Id.* at 447 (Venters, J., concurring). By her own initial self-report, Judge Maze described the night that led to her charges, Counts I-IV, as "chaotic and the course of events leading up to, and including, the incident unusually so; there was a general lack of timely information as well as several attempted and missed phone calls for every contact made, leading to a somewhat amorphous and confusing timeline." Later in her letter, she stated:

25

> This situation has been traumatic for our three (3) children. I am informing you by self-report because I have been upset that this happened. I would not have made the choice to write and fax those orders, knowing I had a conflict, **outside of the chaos, confusion and fear of the immediate circumstances I was inside of on September 18, 2017.**

(emphasis added). Judge Maze followed her informal conference with a letter to the Commission dated February 28, 2018. She included the following:

> September 18, 2017 will be etched in my mind forever. Just as you cannot imagine anything like this happening in your lives, I would never have imagined such events occurring in mine and I was not prepared to make decisions inside of the instant circumstances. **In my previous letter I did my best to convey the frenetic timeline and factors that precipitated my decisions that night.** This included my thinking at the time with respect to concerns about preservation of evidence, as well as concerns about my ex-husband's safety and a delay in his right to due process because of my position. I wanted you to understand my perspective in the moment. I realize now that my attempt to explain my thinking may have been taken as an effort to justify my actions. That was not my intention. **Though it was not planned or thought out and the matter, as it unfolded, was chaotic and confusing**; I am responsible for exercising sound judgment even when I am confronted with unforeseen and difficult issues. I take that responsibility to heart and have been devastated that my inability to process the immediate situation appropriately led to such error in judgment. . . .

(emphasis added). These candid descriptions of a night, involving telephone calls to district judges, who properly had jurisdiction over the matter, multiple contacts with the county jailer and two attempts to secure drug tests for her ex-husband, demonstrate to us someone who was dealing with what she believed to be a crisis, impacting not only her ex-husband but also her family and herself. Because of her "crisis" and feeling panicked, she made precipitous and poor decisions. Similarly, she made a precipitous decision to initiate *ex parte* contact with Judge Coleman. A first-year judge with a fleeting knowledge of the Code of Judicial Conduct would realize these actions were, to put it

26

bluntly, bad ideas. We certainly expect more of our judges, especially one who has been on the bench for almost 20 years.

We note the foregoing because we feel compelled to address the Commission's misunderstanding and erroneous conclusion of law as to the range of sanctions available to it. The sanctions available to the Commission are "separately or collectively of (1) admonition, private reprimand or public reprimand; (2) suspension without pay, or removal or retirement from judicial office[.]" SCR 4.020(1)(b). Because of the reading of the two rules, SCR 4.020 and 4.025, we find it curious that the Commission believes that it has no power to impose a sanction greater than public reprimand on a judge or justice following his or her retirement or resignation. *See* Commission's Final Order, p. 17 (stating "[i]f Judge Maze was still a sitting Judge, the Commission would remove her from office[]"). This erroneous interpretation has significance because it permits a judge to resign and avoid what would be a severe, but perhaps justifiable sanction, the loss of retirement benefits. *See* KRS 21.345(1) (defining "retirement" for purposes of KRS 21.350 to 21.510, the Judicial Retirement Plan, as "voluntary resignation or failure of reelection, but does not include a removal for cause[]") (emphasis added). The two rules, SCR 4.020 and 4.025 clearly establish that the Commission has available the sanction of "removal" notwithstanding a judge's separation from office.

While some might argue that the prompt protection of the public from judicial misconduct is the ultimate goal of a removal proceeding, and retention of retirement benefits supports that end by encouraging a judge to resign while serious charges are pending, that end is currently supported by SCR 4.020(1)(a), permitting temporary suspension of a judge pending final

27

adjudication.  But it would be incredible that a judge could commit serious crimes and still retain a substantial retirement benefit.[15]  A better policy, as expressed in SCR 4.020 and 4.025, is that a judge's separation from office prior to the Commission's hearing has no bearing on the Commission's available range of sanctions, up to and including removal.  Adhering to this rule promotes justice and public confidence in the judiciary and incentivizes judges to comply with the law.

We make these comments because Judge Maze's actions, as we have noted, appear to have been induced on the spur of the moment, while she, in her words, was gripped by "chaos, confusion and fear."  This stands in contrast to a more deliberate course of criminal activity or more numerous examples of separate violations of the Code of Judicial Conduct.  *See, e.g., Alred,* 395 S.W.3d at 446 (upholding judge's removal from office following findings of official misconduct on eight charges (representing separate events)); *Starnes v. Judicial Ret. & Removal Comm'n,* 680 S.W.2d 922, 923 (Ky. 1984) (upholding judge's removal from office for chronic and pervasive absence from court and inattention to business of office, and for refusal to disqualify over cases involving close personal friends); *Wilson v. Jud. Ret. & Removal Comm'n,* 673 S.W.2d 426, 428 (Ky. 1984) (upholding judge's removal from office for course of conduct, intentionally and wrongfully misusing judicial power, to assist close friend, and separate count of dismissing case following *ex parte* meeting with defendant); *see also Kentucky Jud. Conduct Comm'n v. Woods,* 25 S.W.3d 470,

---

[15] As previously noted, Judge Maze has been indicted for three Class D felonies. That case is still pending, and she is presumed innocent.  Thus, we make no comment on that proceeding.

471 (Ky. 2000) (noting multiple instances of judicial abuse which justified district judge's removal from office (although judge in question had not appealed the Commission's order removing him from office)).

All of the foregoing considered, we find that Judge Maze's conduct, while ill-considered, did not rise to a level meriting removal, but that a significant period of suspension would have been more appropriate. Of course, because Judge Maze separated from office prior to the Commission's hearing, suspension at that point was impractical. We hold that the Commission appropriately issued a public reprimand.

We affirm the Commission's Finding of Fact, Conclusions of Law and Final Order.

Minton, C.J.; Hughes, Nickell, VanMeter, Wright, J.J., Beck and Collins, S.J., sitting. All concur. Wright, J., concurs in result only. Lambert and Keller, J.J., not sitting.

**WRIGHT, J., CONCURRING IN RESULT ONLY:** While the majority opinion is excellent in this case, I disagree insofar as it agrees with the Commission's logical fallacy as to Count IV. Specifically, the Commission's Findings of Fact and Conclusions of Law reads, in pertinent part:

> An argument that [Judge Maze] mistook these signature lines for distribution lines defies logic because it is contradicted by her subsequent conscious decision to withhold them from the clerk, thereby preventing the distribution. Insisting on this dubious reasoning undermines the credibility of [Judge Maze's] representation that she was confused by the form.

In fact, it is the Commission's statement—not Judge Maze's—which contains a failure in logic.

29

There is nothing either illogical or contradictory about Judge Maze's two statements. First, that she was mistaken about the signature lines and, second, that she intentionally failed to file the orders with the Circuit Court Clerk. A person could be mistaken in a moment of personal crisis *and* then, once the crisis has abated, realize the mistake and act in an altered manner. One of these actions does not belie the other or speak to Judge Maze's intent in the moment.

COUNSEL FOR APPELLANT:

Thomas E. Clay
CLAY DANIEL WINNER LLC


COUNSEL FOR APPELLEE:

Jeffrey C. Mando
Olivia Flora Amlung
ADAMS STEPNER WOLTERMANN & DUSING, PLLC

Jimmy Adell Shaffer
Executive Secretary
JUDICIAL CONDUCT COMMISSON